KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.
551 Fifth Avenue, 18th Floor
New York, New York 10176
(212) 968-6000
Matthew J. Gold

*Proposed Counsel for Debtor Madison Maidens, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x
:
In re:                                                  :   Chapter 11
:   Case No.
MADISON MAIDENS, INC.,                                  :
:   ECF Case
Debtor.                              :
:
:
------------------------------------------------------- x

## DECLARATION PURSUANT TO LOCAL RULE 1007-2 AND IN SUPPORT OF FIRST DAY MOTIONS

Steven Kattan declares, under penalty of perjury, pursuant to 28 U.S.C. §1746, that the following is true and correct:

1.   I am the President of Madison Maidens, Inc., the above-captioned debtor (the "Debtor"), having filed a petition for relief under chapter 11 of title 11 of the United States Code in this Court on this date.

2.   The Debtor is an intimate apparel wholesale company that sells its products under the Jones New York license to stores in the USA and Canada.

3.   The Debtor is solely and wholly dependent on the Jones New York trademark license for its revenue. Jones New York, the owner of Jones New York trademark, decided to close its business and shutter all of its stores. In the immediate wake of the announcement by Jones New York, Macy's discontinued purchases from the Debtor and cancelled all purchase orders. Macy's is the Debtor's single largest customer.

1

4. Subsequently Hudson Bay stores in Canada, the Debtor's second largest customer, also advised the Debtor that the Jones New York brand will no longer be carried in its stores.

5. With the cancellation of orders, the Debtor was required to sell its licensed goods at a substantial discount to off price retailers, thereby incurring sizable losses as well as, greatly reduced revenue.

6. There has been no committee of creditors organized prior to the filing of the chapter 11 petition herein.

7. A list of the Debtor's non-insider unsecured creditors is set forth in Schedule 1.

8. The Debtor has no secured creditors.

9. A summary of assets and liabilities is set forth in Schedule 2.

10. There are no actions pending or threatened against the Debtor or its property where a judgment against the Debtor or a seizure of its property may be imminent.

11. The Debtor employs 3 individuals (excluding myself) and has an average bi-weekly payroll of $ 13,787.97.

12. I have been President of the Debtor since its inception in 1983. I am responsible for the day-to-day management of the company, including product development and sales.

13. The Debtor has no property that is in the possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents, or secured creditor, or agent for any such entity.

14. The premises owned, leased, or held under other arrangement from which the Debtor operates its businesses are:

135 Madison Avenue, New York, NY 10016 – 12th Floor

40 Park Avenue, New York, NY 10016 - 15F

15. The Debtor's books and records are stored on a server in Sri Lanka, and are accessible on-line.

16. The Debtor makes payroll twice a month. The estimated amount of the weekly payroll to employees (exclusive of officers, directors, stockholders, and partners) for the 30 day period following the filing of the chapter 11 petition is $ 6,893.99.

17. No amounts have been paid or are proposed to be paid for services for the 30 day period following the filing of the chapter 11 petition to officers, stockholders, and directors.

18. The estimated cash receipts and disbursements, net cash gain or loss, obligations and receivables expected to accrue but remain unpaid, other than professional fees for the 30 day period following the filing of the chapter 11 petition is set forth in Schedule 3.

19. The certification of the resolution of the Debtor's board of directors authorizing the filing of a bankruptcy petition is annexed as Exhibit A hereto.

20. Disclosure of ownership is contained in the statement required under Bankruptcy Rules 1007a(1) and 7007.1(a), Exhibit B hereto. None of the Debtor's securities are publicly held.

21. The Debtor intends to pursue an orderly liquidation of its business and property. The Debtor intends to hold its property as a debtor in possession in accordance with the provisions of chapter 11 of the Bankruptcy Code and intends to propose a plan pursuant to the provisions thereof.

**First Day Motions**

22. As described through the first day motions, the Debtor seeks to ensure the continuation of its business operations without interruption. I believe that the requested relief is necessary to stabilize the Debtor's operations and address certain issues that threaten to jeopardize its ongoing viability. The Debtor intends to seek entry of orders approving each of the first day motions as soon as possible in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.

*Cash Management Motion.* **Debtor's Motion for Entry of Interim and Final Orders Authorizing the Debtor to (A) Continue Its Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, and (C) Maintain Existing Bank Accounts**

23. It is my understanding that the Debtor filed a motion to continue using its existing bank accounts, ordinary course cash management and banking practices. The Debtor maintains an integrated cash management system that provides well-established mechanisms for the collection, management, disbursement and investment of funds used in its operations (the "***Cash Management System***"). The Cash Management System is comprised of four bank accounts (collectively, the "***Bank Accounts***") located at two banks (collectively, the "***Banks***"), and can be reduced to two components: (i) a payroll account (the ***"Payroll Account"***) from which the majority of the Debtor's cash is disbursed to satisfy the Debtor's payroll obligations; (ii) operating and disbursement accounts (collectively, the ***"Disbursement Accounts"***).

24. All Disbursement Accounts are funded by a primary operating account with HSBC, with account number ending in 3545 (the "***Primary Operating Account***"). The Primary Operating Account is, among other things, used for electronic deposits, wire transfers, and electronic checks.

25. The Payroll Account is funded from the Primary Operating Account.

4

26. There are two Disbursement Accounts, which are funded directly from the Primary Operating Account. The Canadian Disbursement Account makes disbursements to and accepts deposits from Canadian entities that use Canadian dollars. The second Disbursement Account, with Chase, supplements the Primary Disbursement Account for administrative convenience.

27. Many of the Debtor's customers make their payments to the Debtor through electronic transfers that are tied to the Debtor's Primary Operating account. Likewise, the Debtor uses electronic transfers to handle approximately 80% of its payments. If the Debtor is required to open new accounts all of these arrangements will have to be redone.

28. In my experience it is difficult for American companies to open Canadian bank accounts. Nearly half of the Debtor's projected post-petition business will be in Canada. Allowing the Debtor to continue to use its current Canadian account will save the Debtor a significant headache.

29. I understand that, by the Cash Management Motion, the Debtor is seeking, among other things, to continue limited use of its Cash Management System in the ordinary course of business, including maintaining its existing Bank Accounts. It is essential to the Debtor's smooth transition into chapter 11 that it be permitted to maintain its existing Cash Management System. Disruption to these processes and procedures could have an extremely detrimental effect on the Debtor's business.

30. Accordingly, the Debtor requests authority to continue to use its existing Primary Operating Account, Payroll Disbursement Account, and Canadian Disbursement Account, subject to the requirement that each account at no time exceed a $250,000 balance. The Debtor

will promptly open a Debtor in Possession account at an approved depository, which account will hold the bulk of the Debtor's cash assets.

### *Employee Wages Motion*. Debtor's Motion for Entry of Interim and Final Orders (A) Authorizing Payment of Prepetition Wages and Related Payroll Obligations, (B) Authorizing Continuation of Employee Benefits Programs and Related Administrative Obligations in the Ordinary Course and (C) Authorizing All Financial Institutions to Honor All Related Payment Requests

31. As of the Petition Date, the Debtor has 3 employees, not including myself, all of whom are employed by the Debtor on a salaried basis (the "***Employees***"). In addition to its Employees, the Debtor may supplement its workforce with independent contractors depending on the Debtor's business needs.

32. The Debtor's value is inextricably linked to its Employee workforce, without which the Debtor literally could not operate. The Employees perform a variety of critical functions, including: administrative support, accounting and billing, customer care, human resources, information technology, marketing, network operations and maintenance, payroll, procurement, sales and treasury. The Employees' skills and their knowledge and understanding of the Debtor's business are essential to the effective reorganization of the Debtor's business.

33. Just as the Debtor depends on the Employees for its day-to-day operations, so too do the Employees depend upon the Debtor. Indeed, the Employees rely exclusively on payments received from the Debtor for their compensation, benefits and expense reimbursements to continue to pay their daily living expenses. In an effort to minimize the personal hardship to Employees and to maintain morale and stability in the Debtor's business operations during this critical juncture, the Debtor seeks authority to continue to pay and honor, in its discretion (except where payments are required by applicable law), amounts arising under or in connection with the

6

Debtor's obligations to its Employees. I believe this relief is critical to avoid disruption to the Debtor's operations.

34. As further described in the Employee Wages Motion, the Debtor's Employees are owed and have accrued various prepetition payments and benefits not yet paid or otherwise realized. Thus, by the Employee Wages Motion, the Debtor requests authority to continue to honor and pay prepetition claims and obligations related to certain Employee Obligations during the period from the Petition Date through and including the date set for a final hearing on the Employee Wages Motion (the "*Interim Period*") and continue or otherwise honor the reimbursement of expenses that the Debtor provides its Employees and related administrative obligations. Further, the Debtor is not currently seeking authority to pay any Employee an amount exceeding that which is entitled to priority under the Bankruptcy Code.

35. I expect that the Debtor will have enough cash on hand to pay all of its postpetition obligations, including those related to Employee Obligations. Payment of the Employee wages up to the statutory cap will enhance the value for the benefit of all stakeholders by ensuring that the Employees will continue to provide vital services to the Debtor and its customers at a critical juncture in this chapter 11 case. Any interruption to the payment of Employees' wages could have a material, negative effect on the physical well-being and livelihood of the Employees and their families. Absent the requested relief, the Debtor's ability to reorganize would be jeopardized by the likelihood that otherwise loyal Employees will seek other employment alternatives. This would be particularly devastating to the Debtor's business, which is highly dependent upon its workforce to operate its business. I believe that workforce continuity is critical to the Debtor's post-filing stabilization and overall restructuring

efforts and that absent this relief, the success of the Debtor's restructuring efforts would be jeopardized.

### *Tax and Customs Motion*. Debtor's Motion for Entry of Interim and Final Orders Authorizing (A) Debtor to Pay Taxes and Fees and (B) Financial Institutions to Honor Related Checks and Electronic Payment Requests

36. By this motion, I understand that the Debtor is seeking entry of interim and final orders authorizing the Debtor to pay any amounts that may come due on account of prepetition claims relating to certain sales, use, and excise taxes (collectively, the "Taxes"), as well as customs and similar fees (collectively, the "Fees"), to various governmental authorities (collectively, the "Authorities"). I understand that the Debtor is further requesting that the Court authorize the Debtor's financial institutions to receive, process, honor and pay checks presented for payment and electronic payment requests relating to the foregoing.

37. The goods sold by the Debtor are manufactured overseas and imported. The Debtor routinely and in the ordinary course of business pays customs Fees ("*Customs Fees*") for the import of such goods. Some of these Customs Fees may be assessed postpetition on goods shipped prepetition. Over the past 11 months the Debtor's average monthly Customs Fees were approximately $27,000 for U.S. customs and approximately $42,000 CAD for Canadian customs. The Debtor estimates that the amount of Customs Fees that may fall into this category are approximately $20,000.

38. The Debtor is responsible for remitting use taxes on account of the purchase of various inventory, supplies or other goods used in its business. In the ordinary course of business, the Debtor pays sales and use taxes (the "*Taxes*") to certain Authorities. The Debtor believes that, as of the Petition Date, it will have accrued approximately $10,000 CAD in Taxes.

8

39. I believe that the payment of the prepetition Taxes and Fees is critical to the Debtor's continued operations. I have been advised that nonpayment of these obligations may cause the Authorities to take precipitous action, including, but not limited to, preventing the Debtor from conducting business in applicable jurisdictions, subjecting the Debtor's management to personal liability for nonpayment of taxes, and seeking to modify the automatic stay, any of which, I believe, would disrupt the Debtor's day-to-day operations and could impose significant costs on the Debtor's estate. It is my view that obtaining authority to pay the Authorities in accordance with the Debtor's prepetition business practices is in the best interest of the Debtor and its estate and will enable the Debtor to operate during the postpetition period without disruption. The Debtor anticipates that $40,000 CAD in Taxes and Fees will become due and payable during the 21 day period from the Petition Date through and including the date set for a final hearing on the Debtor's motion. Accordingly, during this 21 day period, I understand that the Debtor is only seeking authority to pay Taxes and Fees not to exceed an aggregate cap of $80,000, and only to the extent they become payable before the final hearing. For the foregoing reasons, the Debtor believes that payment of Taxes and Fees is in the best interest of the Debtor, its estate and creditors and all parties in interest in this chapter 11 case.

## CONCLUSION

40. I believe the Debtor can effect a reorganization plan that will be acceptable to the Debtor's creditors.

41. I am convinced that a liquidation of the Debtor's assets under chapter 7 would not be in the best interest of all the parties hereto.

9

42. That by reason of the foregoing, I believe that the interest of all parties would best be served by a continuation of the Debtor as Debtor in Possession while the orderly liquidation process unfolds under chapter 11.

Dated: November 10, 2016             /s/ Steven Kattan
                                                                         Steven Kattan

305406.7 - 11/10/16

## 20 LARGEST UNSECURED NON-INSIDER CREDITORS

| # | Name | Address | Telephone # | Outstanding as of 11/10/16 | Disputed |
|---|---|---|---|---|---|
| 1 | Giant Channel, Inc. | P.O. Box 920001, Tsim Sha Tsui Post Office, Hong Kong | (852) 2980-1888 | $11,510,606.92 | Yes |
| 3 | The Hudson's Bay Company | A/P Dept. Comptes Fournisseurs P.O. Box 20040 Jackson, MS 39289-0040 USA | (800) 521-2366 | $85,000.00  CAD | Yes |
| 3 | Belk, Inc. | 2801 W. Tyvola Road Charlotte, NC 28217 | (980) 949-2872 | $82,000.00 | Yes |
| 4 | Travellers Property Casualty Company of America | P.O. Box 660317 Dallas, TX 75266-0317 | (201) 226-1200 | $51,285.00 | Yes |
| 5 | Blue Shield of California | Installation and Billing Dept. P.O. Box 3008 Lodi, CA  95241 - 3008 | (800) 325-5166 | $3,859.86 | Yes |
| 6 | Ready Refresh by Nestle a Division of Nestle Waters North America Inc. | P.O. Box 856192 Louisville, KY 40285-6192 | (800) 274-5282 | $238.15 | No |
| 7 | Staples Credit Plan | P.O. Box 790449 St. Louis, MO  63179-0449 | (800) 767-1291 | $204.37 | No |
| 8 | Stop Pest Control of NY, Inc. | 212 W. 35th St., 10th Floor New York, NY 10001 | (212) 563-0033 | $97.93 | No |
| 9 | NYC Messenger Inc. | 15 East 40th St., New York, NY 10016 | (212) 213-5050 | $25.50 | No |
| | | | **Total:** | **$11,733,317.73** | |

# SCHEDULE 2

## Summary of Assets and Liabilities

### Assets

| | |
|---|---:|
| Cash | 2,774,938.84 |
| Security deposits - net | 39,550.00 |
| Net accounts receivable | 2,033,994.37 |
| Inventory | 1,764,638.01 |
| Prepaids | 112,513.21 |
| **Total Assets** | **6,725,634.43** |

### Liabilities

| | |
|---|---:|
| Creditors holding unsecured priority claims | 6,893.99 |
| Creditors holding unsecured non priority claims | 10,777,722.93 |
| **Total Liabilities** | **10,784,616.92** |

# SCHEDULE 3

### (Estimates for 30 days following petition)

| | |
|---|---:|
| Estimated Cash Receipts | 500,000 |
| Estimated Cash Disbursements | 400,000 |
| Net Cash Gain or (LOSS) | -100,000 |
| Obligations to Accrue but remain unpaid for 30 days | 30,000 |
| Receivables to Accrue but remain unpaid for 30 days | 900,000 |

**Exhibit A**

**<u>CORPORATE RESOLUTION</u>**

Judy Aotaki, Secretary of Madison Maidens, Inc., does hereby certify that a special meeting of the Board of Directors of said corporation was duly held on November 9, 2016 at which meeting a quorum of such directors were present and at which time the following resolutions were duly made, seconded and unanimously adopted:

RESOLVED, that this corporation be and it is hereby authorized to execute and file a petition pursuant to the United States Bankruptcy Code, together with all other affidavits and instruments that may be required, and it is further

RESOLVED, that any officer of the corporation is authorized to execute such petition, affidavits, schedules, financing agreements, retention agreements with any necessary professionals, other pleadings as may be necessary or advisable, and to take all steps and further proceedings as may be necessary from time to time to secure to this corporation any and all relief that it may be entitled to pursuant to the provisions of chapter 11 of the Bankruptcy Code.

RESOLVED, that the Corporation, as Debtor and Debtor in possession under chapter 11 of the Bankruptcy Code, borrow funds in such amounts, from such lenders and on such terms as may be approved by any one or more of the Officers as reasonably necessary for the continuing conduct of the affairs of the Corporation and grant security interests in and liens upon all or substantially all of the Corporation's assets as may be deemed necessary by any one or more of the Officers in connection with such borrowings; and be it further

RESOLVED, that all of the acts and transactions of any one or more of the Officers or Board of Directors of the Corporation, which have been taken, caused to have been taken or made prior to the effective date of the Resolutions in connection with the matters set forth in the Resolutions, are hereby ratified, confirmed and approved.

Dated: November 10, 2016

                                              Madison Maidens, Inc.,

                                              By: _____/s/_____,
                                                   Secretary

**Exhibit B**

KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.
551 Fifth Avenue, 18th Floor
New York, New York 10176
(212) 968-6000
Matthew J. Gold

*Proposed Counsel for Debtor Madison Maidens, Inc.*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In re:

MADISON MAIDENS, INC.,

                 Debtor.

Chapter 11

Case No.

ECF Case

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DISCLOSURE OF OWNERSHIP PURSUANT TO
<u>DECLARATION PURSUANT TO BANKRUPTCY RULE 1007A(1)</u>**

The above-captioned debtor provides the disclosure of ownership required under Bankruptcy Rules 1007(1) and 7007.1(a), and represents as follows:

The Debtor is owned 100% by Madison Intimate Brands Inc. No corporation directly or indirectly owns stock of Madison Intimate Brands, Inc.

New York, NY
Dated: November 10, 2016

KLEINBERG, KAPLAN, WOLFF AND COHEN, P.C.

      /s/
Matthew J. Gold
551 Fifth Avenue
New York, NY 10176
Telephone: (212) 880-9827
Facsimile: (212) 986-8866

*Proposed Counsel to the Debtor
and Debtor in Possession*

15